**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

PHOENIX CONSTRUCTION LLC,

    Plaintiff,

        v.                               CASE NO. 3:25-CV-909-SJF

LOCAL 150 INTERNATIONAL UNION
OF OPERATING ENGINEERS AFL-CIO,

    Defendant.

**OPINION and ORDER**

Ripe before the Court is Defendant's Motion for a Rule 12(e) More Definite Statement and Defendant's Motion for Leave to Amend its Motion for a Rule 12(e) More Definite Statement. For the reasons explained below, Defendant's latter motion will be granted, but the substantive relief sought in the motions will be granted only in part. Accordingly, Plaintiff will be ordered to amend its complaint 14 days from the date of this order, consistent with Federal Rule of Civil Procedure 12(e).

## I.    Background

Plaintiff Phoenix Construction LLC ("Phoenix") filed this case on November 6, 2025, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331. In its complaint, Phoenix alleges that Defendant International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") violated section 8(b)(4)(B) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., by engaging in unlawful secondary activity at a construction project located at 402 Royal Road, Michigan City, Indiana

46360 ("Project Maize"), of which Phoenix is the general contractor. Phoenix's complaint maintains that Local 150 "wants Phoenix to hire only union contractors" for the project and that Local 150's "pressure tactic to achieve this objective has been unlawful secondary activity against Phoenix and other contractors." [DE 1 at 3, ¶8]. Phoenix then lists the alleged unlawful activities that Local 150 has engaged in, "[w]ithout limitation." [*Id.* at 1-2, ¶10].

In response to Phoenix's complaint, Local 150 filed the instant Motion for a Rule 12(e) More Definite Statement. In its motion, Local 150 explains that Phoenix's allegations of unlawful secondary activity are vague and ambiguous such that it cannot respond to them. [DE 12-1 at 3, ¶3]. Local 150 explains that it has the right to engage in primary activities as part of any labor disputes with Phoenix and that some allegations are vague as to whether it refers to primary versus secondary activity. Thus, Local 150 asks the Court to order Phoenix to "file an amended complaint which more definitely states the identity of the various parties supposedly injured; what was the egregious conduct; where and when the conduct occurred, and its claims." [*Id.* at 8].

In response, Phoenix first contends that Local 150's motion violates this Court's briefing requirements for a Rule 12(e) motion. Phoenix explains that Local Rule 7-1(b)(2) requires the moving party to separately file a supporting brief with its Rule 12 motion, which Local 150 did not do here. [DE 11 at 1-2; *see also* N.D. Ind. L.R. 7-1(b)1); (c)]. Phoenix also disputes the substance of Local 150's motion, contending that it impermissibly seeks to conduct premature discovery. Local 150 responded by moving to amend its Rule 12(e) motion—not in substance, but to address the procedural

2

deficiencies raised in Phoenix's response to the motion. [DE 12 at 2]. Local 150's motion

to amend included a proposed amended motion. [*See* DE 12-1]. Phoenix did not object

to this motion to amend despite being afforded ample to do so. *See* N.D. Ind. L.R. 7-

1(d)(3)(B). Local 150 then filed its reply in support of its Rule 12(e) motion on December

26, 2025, arguing that Phoenix must allege more details to show that its dispute with

Local 150 has resulted in unlawful secondary activity such that Phoenix has "an actual

claim for relief." [DE 13 at 6].

## II.     Legal Standard

Local 150's motion invokes Rule 12(e) of the Federal Rules of Civil Procedure,

which provides:

> A party may move for a more definite statement of a pleading to which a
> responsive pleading is allowed but which is so vague or ambiguous that
> the party cannot reasonably prepare a response. The motion must be
> made before filing a responsive pleading and must point out the defects
> complained of and the details desired.

Fed. R. Civ. P. 12(e). In considering whether to grant a Rule 12(e) motion, this Court

takes its guidance from the federal pleading requirements. Per Federal Rule of Civil

Procedure 8(a), a plaintiff's complaint need only contain "a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]

pleading in federal court does not need to plead all the elements of a legal theory and

facts corresponding to each." *Signature Flight Support LLC v. Johnson Controls, Inc.*, No.

24-C-0845, 2024 WL 5132095, at *3 (E.D. Wis. Dec. 16, 2024) (citing *Chapman v. Yellow Cab

Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)). Moreover, "[r]ule 12(e) motions are generally

disfavored," and are generally granted "only when the pleading is so unintelligible that

3

the movant cannot draft a responsive pleading." *Shorewood Forest Utilities Inc. v. McMahon Assocs. Inc.*, No. 2:19-CV-241-PPS-JEM, 2020 WL 3618789, at \*2 (N.D. Ind. July 2, 2020)(quoting *United States for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 303 (N.D. Ill. 1987)).

Still, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also provide enough details about the case to present a story that holds together. *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010). Thus, "the Rule 12(e) motion . . . is perhaps the best procedural tool available . . . to obtain the factual basis underlying a plaintiff's claim for relief." *Reed v. Palmer*, 906 F.3d 540, 554 (7th Cir. 2018).

## III.    Discussion

As stated, Local 150 moved for a Rule 12(e) more definite statement as well to amend their original Rule 12(e). The Court begins with Local 150's Motion to for Leave to Amend its Motion for a Rule 12(e) More Definite Statement.

### A.    Local 150's Motion for Leave to Amend its Motion for a Rule 12(e) More Definite Statement

Phoenix first challenges Local 150's Rule 12(e) motion by pointing out its noncompliance with the Court's local rules for Rule 12 motions. [DE 11 at 1-2, citing N.D. Ind. L.R. 7-1(b)(1),(c)]. Local 150 concedes this deficiency and seeks leave to amend its original Rule 12(e) motion to address the issue. Local 150's proposed amended motion makes no substantive changes, instead separating the filing into a motion and a supporting brief as required by N.D. Ind. L.R. 7-1(b)(1). [DE 12-1; DE 12 at 2].

An adverse party shall have fourteen days after service of a motion in which to serve and respond. N.D. Ind. L.R. 7-1(d)(3)(A). Failure to file a response within the time prescribed may subject the motion to summary ruling. N.D. Ind. L.R. 7-1(d)(5). As of this date, Phoenix has neither responded to Local 150's motion to amend nor provided any explanation for the inaction. Consequently, the Court can only treat Local 150's motion to amend as unopposed. Thus, the Court grants Local 150's motion to amend its Rule 12(e) motion. As Local 150 filed its reply based on the timeframe of the original motion, Local 150's Amended Motion for Rule 12(e) More Definite [DE 12-1] will be deemed filed as though it were the original motion.

With these procedural matters addressed, the Court now addresses the parties' substantive arguments.

**B.      Local 150's Amended Motion for Rule 12(e) More Definite Statement**

Phoenix brings this case under 29 U.S.C. § 158(b)(4), which "defines certain actions by labor organizations or their agents as unfair labor practices." *Landgrebe Motor Transp., Inc. v. Dist. 72, Int'l Ass'n of Machinists & Aerospace Workers*, 763 F.2d 241, 244 (7th Cir. 1985). Phoenix's complaint alleges that Local 150 violated subsection (B) of 29 U.S.C. § 158(b)(4), which "bars certain labor activity against a secondary target." *520 S. Michigan Ave. Assocs, Ltd. v. Unite Here Loc. 1*, 760 F.3d 708, 718 (7th Cir. 2014)

29 U.S.C. § 158(b)(4)(B) provides that:

(b) Unfair labor practices by labor organization — It shall be an unfair labor practice for a labor organization or its agents—
. . .
(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any

5

> goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
>
> . . .
>
> (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person…

Put another way, "[s]econdary activity may be defined as activity in which the union applies economic pressure to a person with whom the union has no dispute regarding its own terms of employment in order to induce that person to cease doing business with, and thereby increase the pressure on, another employer, called the primary employer, with whom the union does have such a dispute." *Landgrebe Motor Transp., Inc.*, 763 F.2d at 244. Certain secondary boycotting and secondary picketing are among the unfair labor activities prohibited by this subsection. *Id.*

But, as Local 150 argues in the instant motion, "nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]" 28 U.S.C. § 158(b)(4)(B). Indeed, "[t]he purpose of § 158(b)(4) is to preserve the right of labor organizations to pressure employers with whom they have a primary dispute, while shielding third parties (usually 'secondary employers') not directly involved." *Am. Dev., Inc. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, No. 98 C 339, 1998 WL 774676, at *3 (N.D. Ill. Oct. 19, 1998)(citing *Helgesen v. International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local Union 498*, 548 F.2d 175, 180 (7th Cir. 1977)).

Here, Phoenix alleges, "without limitation," that Local 150 has engaged in the following unlawful secondary activities at Project Maize since September 2025:

6

a. picketing against Phoenix, with whom it has no legitimate labor dispute;

b. picketing and otherwise threatening other contractors and non-Phoenix employees with, e.g., lost work opportunities, lost or diminished benefits, and/or other harm should they work or continue working on the project;

c. blocking and/or attempting to block ingress and egress from the Project Maize site;

d. picketing the Project Maize site at times when no Phoenix representative was present; and

e. picketing the Project Maize site at entry gates reserved for union contractors.

[DE 1 at 3-4, ¶10]. Local 150 takes issue with (a) above because it suggests a primary labor dispute between the parties, asking: "Is this allegation an admission that there is a primary labor dispute between Local 150 and Phoenix, just not 'legitimate?'" [DE 12-1 at 10]. Local 150 then continues to question Phoenix's use of "legitimate," contending that "[t]he choice is between disputes that are primary or secondary, not whether [they are] 'legitimate.'" [*Id.*].

Local 150 also takes issues with the remaining allegations noted in ¶10(b), (d), (e), raising multiple questions in response to each one to argue that they are vague and ambiguous. In response to ¶10(b), Local 150 asks:

Who are those other contractors and non-Phoenix employees? Once again, are they primary or secondary "neutrals?" Are they Local 150 signatories employing union members, or non-union? Are they working at Project Maize, and if so, what work are they performing? When and where did these "threats" occur? What was said?

[*Id.* at 11]. Next, as to ¶10(d), Local 150 states, "When did this occur? Who are the 'Phoenix representatives?' It frankly strains credulity that the general contractor on a major construction project would ever not have representatives present." [*Id.*]. And finally, as to ¶10(e), Local 150 contends that the allegations are vague because they fail to answer the following questions: "Again, who were these union contractors? When

did this occur? Were those contractors vendors, suppliers, or allies of Phoenix and therefore subject to lawful primary picketing?" [*Id.*].

Local 150 explains that these questions must be answered so it can determine whether to "file[] a motion to dismiss for failure to state a claim under Rule 12(b)(6) or answers the Complaint and seeks discovery." [*Id.*]. Local 150 thus asks the Court to order Phoenix to file an amended complaint that "more definitely states the identity of the various parties supposedly injured; what was the egregious conduct; where and when the conduct occurred, and its claims." [*Id.* at 8].

But as Phoenix contends in response to the motion, Local 150 "cites no analogous case law in support of its position that Phoenix's Complaint is entirely unclear what claims are being asserted against Local 150." [DE 11 at 5 (internal punctuation omitted)]. Unsupported arguments are generally considered waived. *See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)* ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") Still, even considering Local 150's arguments, the Court finds that Phoenix's allegations in ¶10(b), (d), and (e) give Local 150 fair notice of its claims and the grounds on which it rests.

"To state a claim under Subsection 158(b)(4)(ii)(B), [Phoenix] must allege that (1) Local [150] coerced at least one neutral target, (2) Local [150] used coercion with the intent of forcing the neutral party not to do business with [Phoenix], (3) the targeted neutral party ceased or reduced its business with [Phoenix], (4) the neutral party's decision was caused by Local [150]'s conduct, and (5) [Phoenix] was damaged by the neutral party's decision." *Integrity Kokosing Pipeline Servs., LLC v. Pipeliners Union 798*

*United Ass'n*, No. 1:20-CV-2321-RLM-MG, 2021 WL 4194435, at *7 (S.D. Ind. Sept. 15, 2021) (citing *520 S. Michigan Ave. Assocs, Ltd.*, 760 F.3d at 725.)[1]

In ¶10(b), Phoenix alleges that Local 1) picketed and threatened other contractors and non-Phoenix employees 2) with "Lost work opportunities, lost or diminished benefits, and/or other harm should they work or continue working on the project." [DE 1 at 4]. Then, in ¶10(d), Phoenix alleges that Local 150 1) picketed the project "at times when no Phoenix representative was present." [*Id.*]. Local 150 may believe ¶10(d) "strains credulity," but does not mean it warrants granting a motion under Rule 12(e), which seeks to remedy unintelligibility and ambiguity. Finally, in ¶10(e), Phoenix also alleges that Local 150 picketed entry gates reserved for union contractors. Considered with the allegations in ¶11 and ¶10(b), these actions were done to "include or encourage non-Phoenix employees and other contractors to withhold services at Project Maize or cease doing business with Phoenix[.]" [DE 1 at 4]. These allegations plead the elements of the claim and include examples of the alleged unlawful conduct.

As both parties have stated, Rule 12(e) is meant to "strike at unintelligibility rather than want of detail." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 911 (N.D. Ill. 2007). And here, "[w]hile the information that [Local 150] seeks is certainly relevant, [Phoenix is] simply not required to put all relevant information into their complaint." *Edw. C. Levy Co. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, No. 2:07-CV-153PS, 2007 WL 3046448, at *4 (N.D. Ind. Oct. 16, 2007)(denying an alternative motion under Rule

---

[1] Elements (3)-(5) are alleged in ¶12 of the Complaint, which Local 150 does not challenge in the instant motion.

12(e) that asked the Court to order a more definite statement "for proper identification of the parties, persons involved, and locations where conduct allegedly occurred" related to the plaintiff's claims under 29 U.S.C. § 158(b)(4)). Local 150 is on notice of the claims against it in these subsections and can obtain the additional detail sought through discovery.

But Local 150 also takes issue with ¶10(a) and other similar paragraphs of the Complaint, contending that Phoenix must allege more to show that there is unlawful secondary activity (versus only a primary labor dispute between the parties) and that it has a claim for relief, and disputing Phoenix's characterization of the parties' primary dispute as "not legitimate." [DE 12-1 at 3, ¶3]. Indeed, Phoenix does allege in ¶1 of its Complaint, that "[w]hen, however, pressure is aimed at a target with whom the union has no legitimate labor dispute . . . to force the target to use only union contractors and/or induce or encourage others not to do business with the target, such activity violates the National Labor Relations Act." [DE 1 at 1]. Phoenix then states in ¶8 that "[Local 150's] pressure tactic to achieve this objective has been unlawful secondary activity against Phoenix . . . ." [*Id.* at 3]. Phoenix uses this language again in ¶10(a), alleging that Local 150 "has engaged in unlawful secondary activity at Project Maize . . . [by] picketing against Phoenix, with whom it has no legitimate labor dispute." [DE 1 at 4-5].

Phoenix's language appears to be drawn from precedent, which states that "[s]ection 8(b)(4)(B) is, however, the product of legislative compromise and also reflects a concern with protecting labor organizations' right to exert *legitimate* pressure aimed at

10

the employer with whom there is a primary dispute." *N.L.R.B. v. Loc. 825, Int'l Union of Operating Eng'rs, AFL-CIO,* 400 U.S. 297, 303, 91 S. Ct. 402, 406, 27 L. Ed. 2d 398 (1971)(emphasis added). Indeed, as stated above, 28 U.S.C. § 158(b)(4)(B) protects any primary strike or primary picketing that is "not otherwise unlawful." While the Court may not share Local 150's concern with the use of this wording *per se*, the Court agrees that these allegations are unclear as to whether Phoenix is alleging that actions aimed against it, as the primary employer, constitute unlawful secondary activity, when 29 U.S.C. § 158(b)(4)(B) protects "a secondary target." *520 S. Michigan Ave. Assocs, Ltd. v. Unite Here Loc. 1,* 760 F.3d at 718. It is further unclear whether Phoenix's allegations in ¶1, ¶8, and ¶10(a) are meant to be alleged as a separate violation of 29 U.S.C. § 158(b)(4)(B) or whether they are alleged under another vehicle for relief (or for neither purpose). Phoenix's lumping of these allegations warrants granting some of the relief sought by Local 150, as one of Rule 12(e)'s purposes is to "eliminate confusion." *Otter Prods., LLC v. Fellowes, Inc.*, No. 19-CV-6195, 2020 WL 3470260, at *1 (N.D. Ill. June 25, 2020). Thus, Phoenix must amend its complaint to clarify these provisions. As provided in Federal Rule of Civil Procedure 10(b), Phoenix should amend its complaint so that allegations of action taken by Local 150 against Phoenix are pled in a separate count from those allegations of actions directed toward a neutral target.

## IV.    Conclusion

The Court now

- **GRANTS** Defendant Local 150's Motion for Leave to Amend its Motion for Rule 12(e) More Definite Statement [DE 12], and deems Local 150's amended motion filed as of its original motion,

- **DENIES as MOOT** Local 150's Motion for Rule 12(e) More Definite Statement [DE 10]; and

- **GRANTS IN PART** the relief the requested by Local 150 in its amended motion and accordingly **ORDERS** Phoenix to amend its complaint consistent with this order by **August 4, 2026**, as provided in Federal Rule of Civil Procedure 12(e).

**SO ORDERED** this 21st day of July 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge

12